IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

AMOS DEHONTIQUAN SNOWDEN,
    Plaintiff,

vs.                                      Case No.: 3:06cv208/RV/EMT

TRAVIS CARL PEACOCK, et al.,
    Defendants.
_____/

## **ORDER**

        This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 13).  Leave to proceed in forma pauperis has been granted (Doc. 11).  From a review of the complaint, it is evident that Plaintiff must clarify his claims and the relief he seeks. The court will therefore allow Plaintiff an opportunity to correct the deficiency in a second amended complaint.

        As Defendants, Plaintiff names Patrol Officers Travis Carl Peacock and Christain Allen (Doc. 13 at 1, 2).  Plaintiff states that on the morning of February 14, 2006, he was sitting on the upstairs step in his house (*id.* at 7).  His girlfriend, Mary Maldonado was holding him; she was worried he might be hurt or might have overdosed on drugs, and she had called 911 (*id.*).  The police entered the house "without the consent of an adult" and walked up the stairs (*id.*).  The officers, "with taser already drawn" told Ms. Maldonado to move away from Plaintiff, and one officer "moved in and grabed [sic] [Plaintiff] and slambed [sic] [him] to the ground" (*id.*).  Officer Peacock handcuffed Plaintiff, and while Plaintiff was handcuffed on the ground, Officer Peacock began asking Plaintiff his name (*id.*).  Plaintiff would not tell Officer Peacock his name, even after Officer Peacock told Plaintiff not to resist (*id.*).  Plaintiff asked Officer Peacock "how could [he] be resisting while [he's] handcuffed and sitting on the floor (*id.*).  Next, Plaintiff states that Officer Peacock removed his taser and shot Plaintiff in the chest and forehead (*id.*).  As Plaintiff was "still shaken

from the taser," Officer Peacock grabbed Plaintiff by the leg and Officer Allen shot Plaintiff's left foot with a taser (*id.*). While doing that, Officer Allen "shot the other officer in his leg also" (*id.*). Finally, the officers brought Plaintiff to the jail "naked and bleeding from [his] taser wounds" (*id.*).

Plaintiff claims that the Defendants used excessive force and tortured him while he was in handcuffs, while being deliberately indifferent to Plaintiff's rights (*id.* at 8). As relief, Plaintiff "would like the court to do what is right and necessary" (*id.*). In addition, Plaintiff requests punitive damages of $400,000.00 and seeks to have the two Defendants removed from the police force "[b]efore this happen's [sic] to some one else" (*id.*).

Initially, Plaintiff must clarify his claims. In his statement of claims, he lists only "excessive force," but his statement of facts suggests that he may also be making an "illegal entry" claim or an "unlawful arrest" claim, or both. In his second amended complaint, Plaintiff should clarify which claim or claims he is making, and list those claims with specificity in the statement of claims section.

Regarding the possible illegal entry claim, Plaintiff alleges that the officers entered his house "without the consent of an adult." However, Plaintiff is advised that if he is claiming that the officers entered his home illegally, he has failed to establish a violation of his Fourth Amendment right against unreasonable searches and seizures based on the warrantless entry of his home. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. It has been widely recognized that the Fourth Amendment primarily protects the "physical entry of the home." Payton v. New York, 445 U.S. 573, 585, 100 S. Ct. 1371, 1379, 63 L. Ed. 2d 639 (1980). Therefore, a warrantless entry into the home is presumptively unreasonable. *Id.* at 586, 100 S. Ct. 1380.

Despite the strong protection of the sanctity of a private home, the Fourth Amendment's prohibition against warrantless searches is not absolute. United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002). There are a few carefully circumscribed exceptions to the warrant requirement. One such exception is for "exigent circumstances." *Id.* Exigent circumstances may exist, obviating the need for a warrant before entering a private residence, when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Davis, 313 F.3d 1300, 1302 (11th Cir. 2002). The Eleventh Circuit has explained that "the most urgent emergency situation excusing police compliance with the warrant requirement is, of course, the need to protect or preserve life." Holloway, 290 F.3d at 1335. Thus, "emergency

situations which involve endangerment to human life fall squarely within the exigent circumstances exception." *Id.* at 1337. Accordingly, when police officers reasonably believe that a person inside a residence may be in need of immediate aid, the Fourth Amendment does not bar police officers from making a warrantless entry and search. *Id.* (citing Mincey v. Arizona, 437 U.S. 385, 392–93, 98 S. Ct. 2408, 2413, 57 L. Ed. 2d 290 (1978)).

The burden of proving an exception to the warrant requirement lies with the government. *Id.* In proving that the "exigent circumstances" exception applies to a warrantless entry, the government must establish both an exigency and probable cause. *Id.* Unlike probable cause to find evidence of a crime, however, in exigent circumstances involving the possible endangerment to human life, "the probable cause element may be satisfied where officers reasonably believe a person is in danger." *Id.* at 1338.

In the instant case, it is likely that both exigency and probable cause existed when the officers entered Plaintiff's house. Plaintiff has alleged only that the officers entered without the consent of an adult. However, Plaintiff admits that his girlfriend had called 911 because Plaintiff may have been overdosing on drugs and that the officers "were called for medical assistance [sic]" (Doc. 13 at 7). Thus, the officers could have reasonably believed that a person inside the house was in danger. Therefore, the officers were permitted to enter Plaintiff's house, and with the facts as alleged in Plaintiff's complaint, he cannot state a claim that the officers' entry violated the Fourth Amendment.

Regarding the possible unlawful arrest claim, Plaintiff has alleged that he "shouldn't have been place [sic] in handcuff's [sic];" that the officers were called to his house for medical assistance, not violence; and that he was brought to jail. Plaintiff should clarify whether he is making a claim for false arrest (in addition to his claim for excessive force). The elements of a claim for false arrest are a warrantless, malicious arrest or deprivation of liberty without probable cause. Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990). However, a claim of false arrest is barred by the existence of probable cause, Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990), or by the subsequent conviction of the accused., Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986); *see also* King v. Goldsmith, 897 F.2d 885, 886 (7th Cir. 1990); Malady v. Crunk, 902 F.2d 10, 11 (8th Cir. 1990); Epstein v. Toys-R-

Us Del., Inc., 277 F. Supp. 2d 1266, 1274 (S.D. Fla. 2003) (finding that conviction of the accused "is conclusive evidence of the existence of probable cause for the arrest").

     A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. The existence of probable cause to arrest is based on objective standards. Von Stein, 904 F.2d at 578 (citations omitted). Thus, the level of proof needed to make a probable cause determination is conspicuously less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was initially lacking. Marx, 905 F.2d at 1507; Von Stein, 904 F.2d at 578 n.9.

     On the facts alleged, this court cannot determine whether Plaintiff has stated a Fourth Amendment claim for false arrest. If Plaintiff wishes to pursue such a claim, Plaintiff should include facts in his amended complaint demonstrating what he was arrested for, whether he was subsequently charged with a crime in connection with his arrest, and whether he was convicted of any charge related to his arrest. If the facts and circumstances within the officers' knowledge would cause a prudent person to believe that Plaintiff had committed, was committing, or was about to commit an offense, or if Plaintiff was subsequently convicted of an offense related to his arrest, Plaintiff cannot state a claim that his the officers violated the Fourth Amendment by arresting him.

     Finally, Plaintiff is not entitled to all of the relief he seeks. His request to have the two Defendants removed from the police force appears to be directed at the police department that employs them; however, he has not named the police department as a Defendant. Without naming the department, Plaintiff cannot recover injunctive relief from it. Moreover, Plaintiff has not alleged sufficient facts to hold the department liable (and obtain injunctive relief directed at it) in this case. It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Id. (citation omitted).

This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In his complaint, Plaintiff has not alleged any facts regarding the police department. Specifically, he has not alleged that the department participated in or caused the alleged unconstitutional conduct, that there is a history of complaints about excessive force, or that a custom or policy of the department resulted in deliberate indifference to constitutional rights. Unless additional facts exist and are alleged by Plaintiff, Plaintiff will not be able to state a claim against the police department, and he will be unable to obtain the injunctive relief he seeks.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint**." Plaintiff must limit

his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form and include their addresses and employment positions in the "Defendants" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant was involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  <u>Plaintiff should clarify his claims as directed in this order.  Additionally, Plaintiff should state the nature of the relief he seeks, and he should not include a request that Defendants be removed from the police force unless he has named the proper Defendant and alleged sufficient facts to support his request</u>.  Finally, Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. §1983.  This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "**Second Amended Complaint**."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3. Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 22<u>nd</u> day of September 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**