IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

AMOS DEHONTIQUAN SNOWDEN,
    Plaintiff,

vs.                                  Case No.: 3:06cv208/RV/EMT

TRAVIS CARL PEACOCK, et al.,
    Defendants.
_____/

## **ORDER**

       This cause is before the court on Plaintiff's second amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 17).  Leave to proceed in forma pauperis has been granted (Doc. 11).  From a review of the complaint, it is evident that Plaintiff must clarify his claims and the Defendants he has named.  The court will therefore allow Plaintiff an opportunity to correct these deficiencies in a third amended complaint.

       As Defendants, Plaintiff names Patrol Officers Travis Carl Peacock and Christain Allen, and indicates that they are employed by the Escambia County Jail; he also names the "Escambia Police Department" and indicates that it is also employed by the jail (Doc. 17 at 1, 2).  Plaintiff states that on the morning of February 14, 2006, he was sitting on the upstairs step in his house (*id.* at 7).  His girlfriend, Mary Maldonado, was holding him; she was worried he might be hurt or might have overdosed on drugs, and she had called 911 (*id.*).  The police arrived and entered the house "without the consent" of Ms. Maldonado or Plaintiff (*id.*).  The officers, "with taser's [sic] already drawn" told Ms. Maldonado to move away from Plaintiff, and one officer "moved in and grabed [sic] [Plaintiff] slambing [sic] [him] to the floor" (*id.*).  Officer Peacock handcuffed Plaintiff, and while Plaintiff was handcuffed on the ground, Officer Peacock began asking Plaintiff his name (*id.*).  Plaintiff would not tell Officer Peacock his name, even after Officer Peacock told Plaintiff not to resist (*id.*).  Plaintiff asked Officer Peacock "how could [he] be resisting [the officer] while [he's]

in handcuffs and sitting on the floor" (*id.*). Next, Plaintiff states that Officer Peacock shot Plaintiff in the chest and forehead with a taser (*id.*). As Plaintiff was "still shaken from taser," Officer Peacock grabbed Plaintiff by the leg and Officer Allen shot Plaintiff's left foot with a taser (*id.*). While doing that, Officer Allen "shot Officer Peacock in his leg also" (*id.*).

The officers brought Plaintiff to the jail "naked [and] bleeding from [his] taser wounds" (*id.*). Plaintiff states that the officers "brought [him] to jail" for domestic violence even though there was no violence between "[Plaintiff] and [his] girl" (*id.*). The officers also charged Plaintiff with battery on a law enforcement officer (*id.*). Plaintiff alleges that the Department is responsible for the officers' actions, because the Department knew the officers are violent and there is a history of complaints of unconstitutional conduct against the Department (*id.*).

Plaintiff makes three claims against the Defendants. First, Plaintiff claims that the Defendants used excessive force by using their tasers on him while he was in handcuffs (*id.* at 8). Next, Plaintiff claims that the officers entered his house illegally (*id.*). Finally, Plaintiff argues that he was unlawfully arrested (*id.*). As relief, Plaintiff requests punitive damages in the amount of $400,000.00 and seeks to have the two officers removed from the police force "or whatever the court feels is right to do" (*id.*).

Initially, Plaintiff must clarify the Defendants he has named. There is no such entity entitled "Escambia Police Department," and it is unclear whether the officers Plaintiff has named are deputy sheriffs employed by the Escambia County Sheriff's Office or whether they are members of a city police department, such as the Pensacola Police Department. In clarifying the Defendants, Plaintiff should keep in mind that neither the Escambia County Sheriff's Department nor the Escambia County Jail is a proper party to this proceeding. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). In Florida, there is no such legal entity as the "Escambia County Sheriff's Department" or the "Escambia County Jail." Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers, including a sheriff. Fla. Const. art. VIII, §§ 1 (a) and (d). However, no provision is made constitutionally or statutorily for a "Sheriff's Department" as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Department given authority to be sued in such a name. *See* Hobbs v. Holmes County Sheriff's Dep't, No. 5:04cv82/RH, Doc. 10 at 3 (N.D. Fla. July 14, 2004) (concluding that the Holmes County Sheriff's

Department is not a suable entity and that "[f]or claims against the [Holmes County] Sheriff's Department, the appropriate defendant is the Sheriff, Dennis Lee, in his official capacity."); Turner v. Bieluch, No. 9:03cv81059, Doc. 12 (S.D. Fla. 2004) (concluding that Palm Beach County Sheriff's Office lacks capacity to be sued); Erickson v. Hunter, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) (unpublished opinion) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks the capacity to be sued); Jones v. Collier County Sheriff's Dep't, 1996 WL 172989 (M.D. Fla. Apr. 9, 1996) (concluding that Collier County Sheriff's Office is not a legal entity and therefore cannot be sued); *see also* Avant v. Rice, 1992 WL 359633, at *6 (M.D. Fla. Nov. 19, 1992) (unpublished opinion) (holding that county jail is not an actionable legal entity because it does not enjoy a separate legal existence independent of the county or the sheriff's office). For claims against a sheriff's department or a county jail, the appropriate defendant is the Sheriff in his official capacity.  *See* Mitchell v. Untreiner, 421 F.Supp. 886, 888 (N.D. Fla. 1976) (referring to Sheriff of Escambia County, Florida as "the Chief Jailer of the Escambia County Jail"); Avant, 1992 WL 359633, at *6; Hobbs, No. 5:04cv82/RH, Doc. 10 at 3.

Additionally, Plaintiff is advised that he has failed to establish a violation of his Fourth Amendment right against unreasonable searches and seizures based on the warrantless entry of his home.  The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.  It has been widely recognized that the Fourth Amendment primarily protects the "physical entry of the home."  Payton v. New York, 445 U.S. 573, 585, 100 S. Ct. 1371, 1379, 63 L. Ed. 2d 639 (1980).  Therefore, a warrantless entry into the home is presumptively unreasonable.  *Id.* at 586, 100 S. Ct. 1380.

Despite the strong protection of the sanctity of a private home, the Fourth Amendment's prohibition against warrantless searches is not absolute.  United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002).  There are a few carefully circumscribed exceptions to the warrant requirement.  One such exception is for "exigent circumstances."  *Id.*  Exigent circumstances may exist, obviating the need for a warrant before entering a private residence, when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Davis, 313 F.3d 1300, 1302 (11th Cir. 2002).  The Eleventh Circuit has explained that "the most urgent emergency situation excusing police compliance with the warrant requirement is, of

course, the need to protect or preserve life." Holloway, 290 F.3d at 1335.  Thus, "emergency situations which involve endangerment to human life fall squarely within the exigent circumstances exception." *Id.* at 1337.  Accordingly, when police officers reasonably believe that a person inside a residence may be in need of immediate aid, the Fourth Amendment does not bar police officers from making a warrantless entry and search.  *Id.* (citing Mincey v. Arizona, 437 U.S. 385, 392–93, 98 S. Ct. 2408, 2413, 57 L. Ed. 2d 290 (1978)).  The burden of proving an exception to the warrant requirement lies with the government.  *Id.*  In proving that the "exigent circumstances" exception applies to a warrantless entry, the government must establish both an exigency and probable cause. *Id.*  Unlike probable cause to find evidence of a crime, however, in exigent circumstances involving the possible endangerment to human life, "the probable cause element may be satisfied where officers reasonably believe a person is in danger."  *Id.* at 1338.

As Plaintiff was previously advised (*see* Doc. 14), it appears that both exigent circumstances and probable cause existed when the officers entered Plaintiff's house.  Plaintiff has alleged only that the officers entered without the consent of either Plaintiff or Ms. Maldonado.  However, Plaintiff admits that Ms. Maldonado had called 911 because Plaintiff may have been overdosing on drugs and that the officers "were called for medical assistance [sic]" (Doc. 17 at 7).  In addition, Plaintiff admits that the officers received no answer when they knocked on the door (*id.* at 8).  Thus, the officers could have reasonably believed that a person inside the house was in danger and was unable to answer the door.  Under these circumstances, the officers were permitted to enter Plaintiff's house.  With the facts as alleged in Plaintiff's complaint, he cannot state a claim that the officers' entry violated the Fourth Amendment.  <u>Plaintiff should drop this claim from his third amended complaint</u>.

Next, Plaintiff has failed to establish a claim for false arrest.  The elements of a claim for false arrest are a warrantless, malicious arrest or deprivation of liberty without probable cause. Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990).  However, a claim of false arrest is barred by the existence of probable cause, Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990), or by the subsequent conviction of the accused.  Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986); *see also* King v. Goldsmith, 897 F.2d 885, 886 (7th Cir. 1990); Malady v. Crunk, 902 F.2d 10,11 (8th Cir. 1990); Epstein v. Toys-R-Us Del., Inc., 277 F. Supp. 2d 1266, 1274 (S.D. Fla. 2003) (finding that

conviction of the accused "is conclusive evidence of the existence of probable cause for the arrest"). A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. The existence of probable cause to arrest is based on objective standards. Von Stein, 904 F.2d at 578 (citations omitted). Thus, the level of proof needed to make a probable cause determination is conspicuously less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was initially lacking. Marx, 905 F.2d at 1507; Von Stein, 904 F.2d at 578 n.9.

On the facts alleged, Plaintiff has not stated a Fourth Amendment claim for false arrest. Plaintiff indicates that he was charged with domestic violence and battery on a law enforcement officer (Doc. 17 at 7), but Plaintiff does not state whether he was convicted of these crimes. However, the court notes that according to the website of the Escambia County Clerk, Plaintiff was subsequently convicted of felony battery. *See* http://www.clerk.co.escambia.fl.us/. Therefore, it appears that Plaintiff cannot state a claim that the officers violated the Fourth Amendment by arresting him because he was subsequently convicted of the offense for which he was arrested. If Plaintiff was indeed so convicted, he should drop his claim for false arrest.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Third Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form and include their addresses and employment positions in the "Defendants" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant was involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant

from his complaint.  <u>Additionally, Plaintiff should clarify his claims and the Defendants he has named as directed in this order.</u>  Finally, Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. §1983.  This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "**Third Amended Complaint**."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3. Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 27<u>th</u> day of October 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**